**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| STANLEY INDUSTRIES OF § <br> SOUTH FLORIDA, INC. d/b/a § <br> GALLERY INDUSTRIES, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> J.C. PENNEY COMPANY, INC. AND § <br> J.C. PENNEY CORPORATION, INC., § <br> § <br> Defendants. § | Civil Action No. 3:05-CV-2499-L |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion to Dismiss Counts 5, 6, 7, 8 and 9 of the Plaintiff's Original Complaint,[1] filed January 18, 2006. After careful consideration of the motion, response, reply, record and applicable law, the court **grants in part and denies in part** Defendants' Motion to Dismiss Counts 5, 6, 7, 8 and 9 of the Plaintiff's Original Complaint.

### I.    Procedural and Factual Background

Plaintiff Stanley Industries of South Florida, Inc. d/b/a Gallery Industries ("Gallery" or "Plaintiff") filed this action on December 22, 2005. Gallery alleges that Defendants J.C. Penney Company, Inc. and J.C. Penney Corporation, Inc. (collectively "Penney" or "Defendants") breached a contract entered into between the parties by refusing to pay the full amount for clothing Penney ordered from it. Gallery also sues for action for the price, fraud, negligent misrepresentation, usury, and *quantum meruit.*

---

[1]The challenged claims are: Count V, Action for Price; Count VI, Fraud; Count VII, Negligent Misrepresentation; Count VIII, Usury; and Count IX, *Quantum Meruit*. Plaintiff's Original Complaint at 8-11.

**Memorandum Opinion and Order - Page 1**

Gallery, a Florida corporation, manufactures men, women and children's clothing. In March 1997, Gallery executed a contract with Penney to sell apparel to it. The contract is known as an "Electronic Data Interchange Trading Partner Agreement" ("TPA"). The TPA governs the use of electronic communications to "facilitate purchase and sales transactions" between Penney and Gallery. Plaintiff's Memorandum ¶ 1.

Gallery contends that between 1997 and 2002, Penney engaged in a series of improper business practices aimed at gaining bargaining power over it. Such alleged practices included numerous fraudulent "chargebacks" against Gallery, the cancellation or reduction of previously agreed upon purchases and "open orders," and the extracting of "monetary support for profit margins" from Gallery. Plaintiff's Complaint ¶ 9.

Penney filed a motion to dismiss Gallery's claims of action for the price, fraud, negligent misrepresentation, usury, and *quantum meruit* pursuant to Fed. R. Civ. P. 12 (b)(6) for failure to state a claim upon which relief can be granted. Penney also contends that Gallery's fraud and negligent misrepresentation claims should be dismissed pursuant Fed. R. Civ. P. 9(b) for failure to plead fraud with particularity. Penney further maintains that the negligent misrepresentation claim is barred by the statute of limitations. The court now considers the motion.

## II.   Legal Standards

### A.   Standard for Motion to Dismiss - 12(b)(6) Failure to State a Claim

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Stated another way, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowrey*, 117 F.3d at 247. A plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

B. **Standard for Motion to Dismiss - 9(b) Failure to Plead with Particularity**

Fed. R. Civ. P. 9(b) provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.

To satisfy Rule 9(b)'s heightened pleading requirements, the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997). A dismissal for failure to satisfy the requirements of Rule 9(b) is a dismissal on the pleadings for failure to state a claim. *Epic Healthcare Mgmt. Group,* 193 F.3d 304, 308 (5th Cir. 1999). In deciding such motions, the court must accept the factual allegations set forth in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996). In addition, the complaint should not be dismissed unless, based on the allegations made, it appears beyond doubt that the plaintiff can prove no set of facts which would entitle it to relief. *See Conley,* 355 U.S. at 45-46.

III. **Analysis**

A. **Action for the Price**

Penney contends that the action for the price claim should be dismissed because Gallery failed to allege an essential element of the claim — that Defendants failed to pay the price as it became due. Gallery's action for price claim is partially based on a dispute over thousands of price deductions known as "chargebacks." Plaintiff's Complaint ¶ 21. According to Gallery, chargebacks occurred when Penney deducted partial payment owed to Gallery for their alleged mislabeling of shipping notices. Gallery maintains that the shipping notices were accurate and it continually

**Memorandum Opinion and Order - 4**

challenged the chargebacks. Gallery therefore asserts that these improper deductions led to Penney not paying the agreed upon price owed to them. *Id*. Also as part of its action for the price claim, Gallery alleges that it sustained incidental damages as provided by U.C.C . § 2-710.[2]

An action for the price claim is governed by the Texas Business and Commerce Code, which provides:

> **§ 2.709. Action for the Price**
>
> (a) When the buyer fails to pay the price as it becomes due[,] the seller may recover, together with any incidental damages under the next section, the price
> (1) of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer; and
>
> (2) of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.
>
> (b) Where the seller sues for the price he must hold for the buyer any goods which have been identified to the contract and are still in his control except that if resale becomes possible he may resell them at any time prior to the collection of the judgment. The net proceeds of

---

[2]This section provides:

> § 2-710. Seller's Incidental And Consequential Damages
>
> (1) Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care, and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach.
>
> (2) Consequential damages resulting from the buyer's breach include any loss resulting from general or particular requirements and needs of which the buyer at the time of contracting had reason to know and which could not reasonably be prevented by resale or otherwise.
>
> (3) In a consumer contract, a seller may not recover consequential damages from a consumer.

U.C.C. § 2-710 (2003).

**Memorandum Opinion and Order - 5**

> any such resale must be credited to the buyer and payment of the judgment entitles him to any goods not resold.
>
> (c) After the buyer has wrongfully rejected or revoked acceptance of the goods or has failed to make a payment due or has repudiated Section 2.610), a seller who is held not entitled to the price under this section shall nevertheless be awarded damages for nonacceptance under the preceding section.

Tex. Bus. & Com. Code Ann. § 2.709 (Vernon 2006).

Gallery specifically asserts in its complaint that "Penney repudiated its agreement with Gallery to take delivery and pay approximately $800,000 for the goods, which had been produced in response to the buying commitment from Penney." Plaintiff's Complaint ¶ 11. Gallery further asserts that it produced goods under the contract but said goods were never released for shipment, nor did Penney pay for the goods." *Id.* ¶ 13. It also states, "[b]y assessing improper chargebacks, Defendant[s] failed to pay the purchase price for the goods, even though same were accepted and sold by the Defendant[s]." Id. ¶ 21.

The court accepts these allegations as true, and views them in the light most favorable to Gallery. The court determines that Gallery's contentions regarding Penney's failure to pay for the goods it produced for Penney allege an action for the price pursuant to Tex. Bus. & Com. Code Ann. § 2.709, and that the allegation in the Complaint if proved, would entitle Gallery to relief. Accordingly, Penney's motion to dismiss Gallery's action for the price claim will be denied.

### B.     Fraud and Negligent Misrepresentation

Penney contends that Gallery has failed to allege facts sufficient to support several of the elements of its fraud and negligent misrepresentation claims.  Specifically, it alleges that: (1) the bases for the fraud claim occurred after the TPA was signed, thus foreclosing the possibility of fraudulent inducement to contract; (2) Gallery could not have reasonably relied upon the allegedly fraudulent or negligent statements by Penney's buyers; (3) the economic loss rule prevents recovery in tort for the  claims other than fraudulent inducement; (4) Gallery's factual allegations fail to meet Rule 9(b)'s heightened pleading requirements for fraud and negligent misrepresentation; and (5) Gallery's negligent misrepresentation claim is barred by the two year statute of limitations.  Defendants' Motion to Dismiss at 3-4, 7-11.

Gallery counters that the "TPA is not the wholesale contract under which its goods were ordered by Penney and accordingly, the date that the TPA was signed is immaterial to its claims."  Plaintiff's Memorandum at 7.  Gallery further contends that its negligent misrepresentation claim is not barred by the two-year statute of limitation, as 11 U.S.C.A. § 108(a) extends the filing period for a cause of action for a debtor.  Regarding Penney's claim that Gallery cannot bring this claim based on its reliance on Penney's agents' statements, Gallery maintains that such reliance was reasonable because of Penney's contracting practices, as pled in Plaintiff's Complaint.  Gallery also asserts that the economic loss rule does not bar it from recovering damages for loss of its business, as it suffered damages unrelated to the subject matter of the contracts.

     **1.**     **Fraud**

          **a**.     **Rule 12(b)(6)**

Under Texas law, the elements of fraud are: (1) a material misrepresentation was made; (2) which was false; (3) and which was either known to be false when made or was asserted without knowledge of its truth; (4) which was intended to be acted upon; (5) which was relied upon; and (6) which caused injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998); *Sears Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex. 1964).

In support of its fraud claim, Gallery alleges:

> Defendant[s] procured the delivery of conforming goods to Defendant[s] through the use of material misrepresentations made by Jim Nekola on behalf of Penney to Robert Alexander on behalf of Gallery. These representations were contained in the wholesale contract made a part of every purchase commitment placed by Penney with Gallery. Specifically, on or about May 2, 2002, Mr. Nekola made the representation to Gallery that no "markdown" money charges would be taken against the "boys" sleepware programs. Gallery would show that this representation was made with either knowledge of its falsity or with reckless disregard for its truthfulness. As a result of this representation, Gallery continued in its efforts to obtain raw materials and factory production necessary to meet the requirements of its contract with Penney. Gallery would show further that, as a direct result of Penney's actions, it suffered money damages in excess of the minimum jurisdictional requirements of this court.

Plaintiff's Complaint ¶ 23. Gallery further alleges that the TPA mandates that Penney investigate a chargeback once it has been challenged. It maintains, however, that Penney never responded to

**Memorandum Opinion and Order - 8**

its challenge of the buyer's hold[3] "which was in place as a chargeback against its accounts receivable." *Id.* ¶ 24. Gallery further contends:

> Penney committed fraud in the inducement when it issued wholesale contracts which did not include specific language regarding the authority of its Buyers, the handling of challenges to buyer's holds and the use of open ordering to obtain financial advantage. Moreover, Penney either knew that the representations contained within its wholesale contracts were false at the time they were made or made them recklessly as a positive assertion, without knowledge of their truth, with the intent that Gallery would act upon them. Finally, Gallery did rely upon the representations of Penney and, as a result, sustained the injuries and damages for which it now sues.

*Id.* Accepting these allegations as true, the court determines that it is possible for Gallery to prove some set of facts to show that it reasonably relied on fraudulent statements in entering into and performing under the wholesale contracts and therefore be entitled to relief. Accordingly, Penney's motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) for Gallery's failure to state a fraud claim, will be denied.

### b.     Rule 9(b)

The court also determines that Gallery's complaint meets the heightened pleading requirements of Fed. R. Civ. P. 9(b). Gallery specified that the statement it contends was fraudulent was Nekola's representation that no markdown money charges would be taken against the boys' sleepware programs. It contends that Nekola made the representation on or about May 2, 2002. Gallery further alleges that, as a result of the representations, it continued to produce the goods. Gallery asserts that in October 2002, a buyer's hold was placed on its account, and consequently

---

[3] According to Gallery, "A 'buyer's hold' occurs when a Buyer instructs Penney's accounting center to withhold the payment of monies contractually due and owing to the Supplier for goods produced and delivered to Penney." Plaintiff's Complaint ¶ 9.

**Memorandum Opinion and Order - 9**

it suffered money damages. Accordingly, Penney's motion to dismiss pursuant to Fed. R. Civ. P. 9(b) will be denied.

### c. Economic Loss Rule

Penney also contends that to the extent Gallery is pleading a type of fraud other than fraud in the inducement, the economic loss rule bars recovery for tort damages. The economic loss rule provides that "[w]hen the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991). In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: 1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and 2) whether the injury is only the economic loss to the subject of the contract itself. *Formosa Plastics Corp.,* 960 S.W.2d at 45-47. A party, however, may recover tort damages for a fraudulent inducement claim "irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract." *Id.* at 46. Gallery specifically alleges that Penney "procured the delivery of conforming goods under its agreements with Plaintiff through fraud by inducing Plaintiff to ship goods to Defendant through the use of material misrepresentations made by Jim Nekola on behalf of Penney[.]" Plaintiff's Complaint ¶ 23. It also alleges that "Penney committed fraud in the inducement when it issued wholesale contracts which did not include specific language regarding the authority of its Buyers, the handling of challenges to buyer's holds and the use of open ordering to obtain financial advantage." *Id.* ¶ 24. Gallery also asserts that it suffered damages unrelated to the contract as a result of Penney's failure to comply with the terms of its agreements, in that its credit line was tightened and reduced, "resulting in serious financial jeopardy"

and eventually bankruptcy. *Id.* ¶¶ 12, 16. Gallery thus asserts in its complaint a fraudulent inducement claim and that it suffered damages beyond the subject matter of the contract. Accordingly, Penney's motion to dismiss the non-inducement fraud claims pursuant to the economic loss rule will be denied.

### 2. Negligent Misrepresentation

The elements of a claim for negligent misrepresentation are: (1) the representation is made by the defendant in the course of its business, or in a transaction in which it has a pecuniary interest; (2) the information supplied is false; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; (4) the Plaintiff justifiably relies on the information; and (5) the plaintiff suffers pecuniary loss caused by the reliance. *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

#### a. Rule 9(b)

Penney asserts that Gallery's claim for negligent misrepresentation must be dismissed for failure to satisfy Rule 9(b). Although Fed. R. Civ. P. 9(b) by its terms does not pertain to negligent misrepresentation, the Fifth Circuit applies the heightened pleading requirements when the negligent misrepresentation and fraud claims are based on the same set of alleged facts. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003). Gallery's fraud and misrepresentation claims are based upon the same set of facts, and so Rule 9(b) pleading requirements apply. Because the court has already found that the facts alleged in the fraud claim meet the particularity requirement, the negligent misrepresentation claim survives the heightened pleading requirement. The court therefore finds that the Penney's motion to dismiss the negligent misrepresentation claim for lack of particularity should be denied.

**Memorandum Opinion and Order - 11**

### b. Statute of Limitations

Finally, Penney asserts that Gallery's negligent misrepresentation claim is barred by the two-year statute of limitations, as the events that form the basis of Gallery's complaint occurred prior to December 20, 2003, and Gallery did not file its complaint until December 22, 2005. Gallery responds that 11 U.S.C. § 108(a)[4] allows it to extend the filing period for this cause of action because of bankruptcy.

The statute of limitations for negligent misrepresentation is two years. Tex. Civ. Prac. & Rem. Code Ann. §16.003(a) (Vernon 2005); *Texas American Corp. v. Woodbridge Joint Venture*, 809 S.W.2d 299, 302 (Tex. App. – Fort Worth 1991, writ denied). A debtor, however, may commence an action or file a pleading two years after filing for bankruptcy or on the date the statute of limitation expires, which ever is later. 11 U.S.C. § 108(a); *In re Armstrong*, 206 F.3d 465, 470 n.2. (5th Cir. 2000). Gallery contends that it was forced into bankruptcy on December 24, 2003; its reorganization plan was approved, and it was released from bankruptcy on November 28, 2005. Plaintiff's Complaint ¶ 16. Gallery filed its complaint on December 22, 2005, less than two years

---

[4]Section 108 provides:

> Extension of time
>
> (a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of--
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) two years after the order for relief.

*Id.*

**Memorandum Opinion and Order - 12**

after it entered bankruptcy. Gallery's negligent misrepresentation claim, therefore, is not barred by the applicable statute of limitations. *See Andrews v. Diamond*, 959 S.W.2d 646, 651 (Tex. App.--El Paso 1997, pet. denied); *Southwestern Gas Pipeline, Inc. v. Scaling,* 870 S.W.2d 180, 186 (Tex. App.--Fort Worth 1994, writ denied). Accordingly, Penney's motion to dismiss the negligent misrepresentation claim on this ground will be denied.

### C. Usury

Penney contends that Gallery's claim for usury should be dismissed because there were never any loans between the parties. Gallery counters that the transaction it describes in its complaint "could be characterized as loans of money, since no goods were exchanged for them, at the time they were made. Further, a refund of that overpayment or subsequent delivery of the goods would constitute repayment of the principal amount of the loan; i.e. the money advanced." Plaintiff's Memorandum ¶ 22. Gallery bases its claim of usury on a specific chargeback in the amount of $41.60 issued on November 28, 2000. Penney allegedly told Gallery that the chargeback "represented an interest fee on each invoice that resulted in alleged overpayments to Gallery." Plaintiff's Complaint ¶ 28. Gallery contends that these interest charges exceeded the compensation allowed by Texas law for the use of money." *Id.*

Interest is "compensation for use, forbearance, or detention of money." Tex. Fin. Code Ann. § 301.002(a)(4) (Vernon 2005). Usurious interest is "interest that exceeds the applicable maximum amount allowed by law." *Id*. § 301.002(a)(17). Thus the elements of a usury claim are: (1) a loan of money; (2) an absolute obligation to repay the principal; and (3) the exaction of a greater compensation than allowed by the law for the use of the money by the borrower. *First Bank v. Tony's Tortilla Factory*, 877 S.W.2d 285, 287 (Tex. 1994).

**Memorandum Opinion and Order - 13**

The court determines that Gallery's has not alleged the elements of a usury claim in the traditional sense, and it will require a quantum leap of unreasonable logic for the court to conclude that a $41.60 chargeback for overpayment even marginally comes close to stating a claim for usury. Accordingly, Penney's motion to dismiss the usury claim will be granted.

### D.  *Quantum Meruit*

Penney moves to dismiss Gallery's *quantum meruit* claim, citing the existence of a valid contract as a block to *quantum meruit*. Gallery maintains that it has met the notice pleading requirements of Fed. R. Civ. P. 8(a), and its claim is permitted under Fed. R. Civ. P. 8(e)(2). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Id.* Rule 8(e)(2) provides:

> A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds. All statements shall be made subject to the obligations set forth in Rule 11.

*Id.*

*Quantum meruit* damages are available in the absence of an express contract under the theory of an implied contract. *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). "This remedy is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted. Recovery in quantum meruit will be had when nonpayment for the services rendered would result in an unjust enrichment to the party benefitted by the work." *Id.*

**Memorandum Opinion and Order - 14**

(internal quotation marks and citations omitted).  To recover under *quantum meruit* a claimant must prove that:

> 1) valuable services were rendered or materials furnished;
> 2) for the person sought to be charged;
> 3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him;
> 4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

*Id.*

Gallery alleges that Penney breached supply agreements by refusing delivery and payment on goods produced in response to buying commitments by Penney.  Plaintiff's Complaint ¶ 11.  Gallery further asserts that Penney will be unjustly enriched if Gallery does not recover damages for the goods it produced but for which it was never paid.

The court first determines that Gallery's pleadings meet the requirements of Rule 8(a) and Rule 8(e)(2), in that it has pled, alternatively, for *quantum meruit* damages under a theory of an implied contract.  Gallery has also sufficiently pled the elements of this claim.  Accepting these allegations are true, the court finds that Gallery states a cause of action for recovery under *quantum meruit*, and, if the allegations are proved, Gallery would be entitled to relief as to this claim.  This claim, of course, would come into play only if Gallery fails to establish its breach of contract claim.  Accordingly, Penney's motion to dismiss Gallery's *quantum meruit* claim will be denied.

**IV.    Conclusion**

For the reasons stated herein, the court determines that Plaintiff has failed to state a claim upon which relief can be granted as to its usury claim; however, it has stated a claim upon which relief can be granted as to its claims of action for the price, fraud, negligent misrepresentation, and

**Memorandum Opinion and Order - 15**

*quantum meruit*. Accordingly, the court **grants** Defendants' Motion to Dismiss as to Count 8, Plaintiff's usury claim in Plaintiff's Original Complaint. This claim is **dismissed with prejudice**. The court **denies** Defendants' Motion to Dismiss as to Counts 5, 6, 7, and 9 of Plaintiff's Original Complaint.

      **It is so ordered** this 18th day of August, 2006.

                                        Sam A. Lindsay
                                        United States District Judge